IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-474

| MARC C. LEWIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff Marc C. Lewis's Memorandum/Brief (Doc. No. 7), filed February 25, 2016, and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 8) and Memorandum in Support (Doc. No. 9), both filed April 25, 2015. For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**, and the Commissioner's Decision is **VACATED**.

### I. BACKGROUND

On May 11, 2012, Plaintiff Marc Corey Lewis filed an application for Social Security Disability benefits, alleging disability since July 30, 2010 (Tr. 23) as a result of multiple sclerosis ("MS"), anxiety, and depression. Plaintiff's application was denied initially on July 20, 2012, and again upon reconsideration on October 10, 2012. (Tr. 22, 113, 188) Plaintiff, her attorney, and an impartial vocational expert appeared when the ALJ, Jane A. Crawford, held a hearing on June 23, 2014, in Charlotte, North Carolina. (Tr. 22, 38) On August 7, 2014, the ALJ decided that Plaintiff was not disabled within the meaning of the Act since Plaintiff's alleged onset date. (Tr. 32-33)

On August 15, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final administrative decision on Plaintiff's application. (Tr. 1) Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right to review of the Commissioner's decision. He filed this timely appeal on October 7, 2015 (Doc. No. 1), and the Defendant's Motion for Summary Judgment is now ripe for review.

## II. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Rather, they must uphold the decision of the Commissioner, even in instances where they would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456.

The issue before this Court, then, is not whether Plaintiff is disabled, but whether the ALJ correctly applied the relevant law and reached a finding that is supported by substantial evidence.

### III. ANALYSIS

The ALJ considered whether Plaintiff was "disabled" under the Social Security Act between his alleged onset date of July 30, 2010, and the ALJ's decision date of August 7, 2014. To establish that he is entitled to benefits, Plaintiff has the burden of proving he was disabled within the meaning of the Act during this period. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

As an initial matter, a claimant must meet the insured status requirements of the Social Security Act. If the ALJ finds that the claimant was insured during the relevant period, the ALJ uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, for determining disability claims. If the ALJ determines that claimant is conclusively disabled, or not disabled, at any step, the inquiry ends and the ALJ need not proceed to the other steps. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509 and 20 C.F.R. § 416.909; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and (5) whether the claimant is able to adjust to other work, considering his RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v); *id.* § 416.920(g). The claimant bears the burden of production and proof

during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work is available in sufficient numbers in the national economy which the claimant could perform. *Id.* at 1205 (citation omitted).

Here, the ALJ found that Plaintiff was insured through September 3, 2015, and that he has not engaged in substantial gainful activity since his alleged onset date of July 30, 2010. (Tr. 24) At step two, she found that Plaintiff had the following severe impairments: obesity, multiple sclerosis, osteoarthritis of the acromioclavicular joint with inferior osteophyte formation (alternatively diagnosed as right shoulder tendonitis), and adjustment (alternatively mood) disorder with depressed mood. (Tr. 24) The ALJ also noted that although Plaintiff has a history of diabetes mellitus and hypertension, these do not qualify as severe impairments. (Tr. 25) At step three, the ALJ found that Plaintiff did not meet any of the Listings. (Tr. 25-27) Specifically, the ALJ analyzed Plaintiff's degenerative disc disease and found it did not meet or medically equal the Listing for Affective Disorders. *See* 20 C.F.R. 404, Appendix 1 to Subpart P, 12.04.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a computer technician, a help desk worker, and a truck driver. (Tr. 31) However, the ALJ also found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with exceptions. Plaintiff cannot reach overhead with the right dominant upper extremity and is limited to climbing stairs or ramps, balancing, stooping, crouching, crawling, and kneeling on an occasional basis. (Tr. 27) Further, the ALJ found that Plaintiff cannot work in environments with excessive heat, and he is limited to frequent, as opposed to constant, handling and fingering. (Tr. 27) Finally, Plaintiff cannot work at

unprotected heights or around dangerous machinery, he cannot work foot controls, and he is limited to simple, routine tasks. (Tr. 27).

At step five, the ALJ considered Plaintiff's residual functional capacity, along with his age, education, and work experience. (Tr. 32) The ALJ noted that Plaintiff was 41 years old on the alleged disability onset date, and thus defined as a younger individual age 18-44. (Tr. 31) Plaintiff subsequently changed age category to a younger individual age 45-49, and has at least a high school education. (Tr. 31) The ALJ further noted that she need not determine whether Plaintiff's job skills were transferable because, if she made her decision by reference to the Medical Vocational Guidelines, either transferrable or nontransferable skills would direct a finding of "not disabled" in light of Plaintiff's other characteristics. (Tr. 31) Because Plaintiff had additional limitations, however, and could not perform the full range of sedentary work, the ALJ asked the vocational expert to opine on the availability of jobs that Plaintiff could perform. (Tr. 32). The vocational expert testified that Plaintiff could perform the requirements of the following three occupations: (1) a surveillance system monitor (74,470 jobs nationwide, 2,170 locally); (2) a stuffer (354,810 jobs nationwide, 13,360 locally); and (3) a ticket taker (100,643 jobs nationwide, 46,320 locally). Thus, the ALJ determined that "considering [Plaintiff's] age, education, work experience, and residual functional capacity" he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32) Accordingly, the ALJ found that during the relevant period, Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 32)

On appeal to this Court, Plaintiff presents the following assignments of error: (1) the ALJ failed to properly weigh the medical evidence and failed to properly determine Plaintiff's residual functional capacity; (2) the ALJ failed to adequately consider the VA disability

5

determination; and (3) the ALJ relied on flawed vocational expert testimony. (Plaintiff's Brief at 2, Doc. No. 7).

### a. Substantial evidence supports the ALJ's evaluation of Dr. Bryant's opinions.

The opinions from a claimant's treating physician will be given controlling weight if two conditions are met: (1) the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinions are not inconsistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590 (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ determines the treating physician's opinion is not entitled to controlling weight, she still must decide how much weight to give the opinion and provide "specific reasons" for the weight given to the treating source. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996). In this case, the ALJ gave little weight to the opinion of the claimant's treating physician, Dr. Alton Bryant, as she determined that his opinion was inconsistent with the objective medical evidence as a whole. (Tr. 30) Plaintiff raises a number of concerns asserting that there was not substantial evidence in the record for the ALJ to give little weight to Dr. Bryant's opinion. (Plaintiff's Brief, Doc. No. 7)

First, Plaintiff takes issue with the ALJ's disposition of Dr. Bryant's opinion on Plaintiff's functional limitations, asserting the ALJ "summarily rejected [the opinion] as 'reserved to the Commissioner.'" (Plaintiff's Brief at 8, Doc. No. 7). However, Plaintiff was incorrect in stating that this was a basis for the ALJ discounting Dr. Bryant's June 2014 opinion. Rather, the ALJ discounted the November 2010 and October 2012 statements that Plaintiff was disabled and unemployable on the basis that these statements pertain to an issue reserved to Defendant. Thus, there is no error.

Second, the ALJ found that Dr. Bryant identified two functional limitations that are particularly unsupportable: limiting Plaintiff to sitting for less than an hour, and limiting Plaintiff

6

to standing or walking for less than an hour in an eight-hour day. (Tr. 30, 860) The ALJ explained that these opinions are inconsistent with the evidence as these limitations would imply that Plaintiff would have to be lying down for over six hours in an eight hour day, and thus found that the lack of supportability of these limitations "affects the reliability of [Dr. Bryant's] entire statement" of Plaintiff's functional limitations. (Tr. 30)

Plaintiff's testimony that he could sit for two hours at a time is inconsistent with Plaintiff's activities of daily living. (Tr. 30) For example, at a February 2011 consultative examination, Plaintiff reported that he could drive a car, do dishes and laundry, vacuum, mop, sweep and do yard work, among other things. (Tr. 25-26, 304) At an April 2011 consultative examination, Plaintiff reported that he did chores such as washing dishes, vacuuming, laundry, and cleaning the bathroom and other rooms. Plaintiff also noted that he attended church, as well as an MS support group. (Tr. 26, 309-10) At various points during 2012 through 2014, Plaintiff reported that he and his wife cared for their grandson at their home. (Tr. 26, 829)

Later records indicate that Plaintiff took several steps to improve his health. June 2013 records note that Plaintiff felt better when he did yoga (Tr. 29, 621) and that Plaintiff was considering returning to work or going back to school, which "suggests that he felt himself capable of doing so." (Tr. 29, 624) An August 2013 record indicates that Plaintiff had attended several nutrition groups, improved his diet, and increased his exercise by walking and working in his yard. (Tr. 29, 600) These activities of daily living are generally inconsistent with Dr. Bryant's unexplained opinion that Plaintiff had to take unscheduled 15-minute breaks every hour during an eight-hour day. (*See* Tr. 864)

Plaintiff argues three points of testimony to contradict these activities of daily living. He first notes that he testified to difficulty using his fingers. (Plaintiff's Brief at 9, Doc. No. 7; Tr.

7

59-60) However, the ALJ limited Plaintiff to frequent, rather than constant, handling and fingering. (Tr. 27) The ALJ also noted that Plaintiff testified to many activities involving finger manipulation, including completing jigsaw puzzles, using a computer to play games, and pouring a pitcher of drinks in his role as a volunteer worker. (Tr. 29, 68, 73-74) This evidence is inconsistent with Dr. Bryant's opinion that Plaintiff could not use his fingers/hands for fine manipulation. (*See* Tr. 861-62) Further, Plaintiff argued that he testified that he received help with household chores from his adult son, although this does not negate the evidence of Plaintiff's having performed all of the activities of daily living. Finally, Plaintiff testified that he tended not to go out and socialize (Plaintiff's Brief at 9-10, Doc. No. 7; Tr. 71), however the aforementioned activities of daily living indicate Plaintiff had notably positive social interaction.

Third, the ALJ noted that Dr. Bryant's June 2014 opinion is inconsistent with the treatment notes or the medical record as a whole. (Tr. 30) The ALJ reasoned that the lack of supportability for Dr. Bryant's sitting and standing/walking limitations "affects the reliability of the entire statement." (Tr. 30) Plaintiff argues that Dr. Bryant cited to MRI findings in support of his assessment because they showed multiple white-matter lesions consistent with MS with active demyelination. (Plaintiff's Brief at 9, Doc. No. 7; Tr. 858) But Defendant notes that a diagnosis alone does not provide support for such extreme functional limitations. *See Murdock v. Colvin*, No. 5:14-cv-00040-RJC-DSC, 2014 WL 9866441, at *4 (W.D.N.C. Nov. 19, 2014) ("As a matter of law, diagnosis of an impairment does not alone determine the ultimate issue of disability; [t]here must be a showing of related functional loss.").

Plaintiff also argues that Dr. Bryant's statement was consistent with the treatment notes or the medical records as a whole because "examinations revealed reduced strength in [Plaintiff's] lower extremities despite wearing a brace (Tr. 39, 374) and decreased strength and

8

coordination on his left side (Tr. 611) even with aggressive Tysabri treatments." (Plaintiff's Brief at 9, Doc. No. 7) In response, Defendant asserts that lower-extremity strength is not directly addressed in Dr. Bryant's opinion and that Plaintiff's upper-extremity strength is consistent with the ALJ's finding. (Memorandum in Support at 9, Doc. No. 9) Defendant further notes that the record, as the ALJ explained, seemed to indicate that Plaintiff's MS was either stable or improved. (Memorandum in Support at 9, Doc. No. 9) The ALJ noted that June 2013 records indicate that Plaintiff felt better when he did yoga (Tr. 29) and an updated MRI scan obtained in March 2014 indicates that Plaintiff's MS was stable, with no evidence of active demyelination. (Tr. 29) Thus, substantial evidence supports the ALJ's finding that Dr. Bryant's opinion was inconsistent with the treatment notes or the medical records as a whole.

Fourth, Plaintiff takes issue with other medical opinion evidence, arguing that the "only contradictory medical evidence given probative weight by the ALJ was the report of a non-examining physician," referring to the State-agency medical consultant, Dr. Woods. (Plaintiff's Brief at 10, Doc. No. 7). However, rather than relying entirely on Dr. Woods' opinion, the ALJ noted that the opinion was only partially consistent with her own findings and that Dr. Woods did not personally examine Plaintiff nor listen to his testimony. (Tr. 30) Specifically, the ALJ found Plaintiff could only perform sedentary work (Tr. 27) while in July 2012, Dr. Woods opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. 106-07) Dr. Woods relied on a February 2011 consultative examination, whereas the ALJ gave little weight to the same examination. (*See* Tr. 30, 303-06). Thus, Dr. Woods' opinion is not the only evidence contradictory to Dr. Bryant's opinion on which the ALJ relied, rather the ALJ relied on other evidence in discounting Dr. Bryant's opinion.

9

Finally, because the ALJ did not give controlling weight to Dr. Bryant as a treating source opinion, she must apply the following factors in determining the weight to give to the medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's supportability, particularly by medical signs and laboratory findings; (4) the opinion's consistency with the record as a whole; (5) the physician's specialization as it relates to his or her medical opinion; and (6) other factors that tend to support or contradict this opinion. 20 C.F.R. § 404.1527(c). Plaintiff argues that the ALJ failed to consider these factors in determining whether Dr. Bryant's opinion should be given controlling weight. (Plaintiff's Brief at 11, Doc. No. 7) However, the Court disagrees.

The ALJ is required to consider each factor identified in § 404.1527(c), however, relevant case law does not require the ALJ to explicitly discuss each listed factor in weighing medical opinions. *Burge v. Colvin*, No. 1:12-cv-00066-MR, 2014 WL 1302992, at *4 (W.D.N.C. Mar. 28, 2014). The ALJ's decision indicates that she did consider the six factors. For example, the ALJ referred to Dr. Bryant as Plaintiff's treating physician (Tr. 30) and noted that his June 2014 opinion is inconsistent with the treatment notes. Regarding Dr. Bryant's neurology specialization, the ALJ cited an October 2012 letter and the June 2014 opinion, both of which identify that Dr. Bryant practices neurology. (Tr. 30) Finally, as indicated above, the extreme limitations in Dr. Bryant's June 2014 opinion are neither supportable nor consistent with the evidence of record.

### b. The ALJ adequately considered the VA disability determination

Plaintiff argues that the ALJ did not give appropriate weight to the VA disability determination that Plaintiff is "totally and permanently disabled." (Plaintiff's Brief at 12, Doc.

No. 7; Tr. 855) Plaintiff states that the VA gave him a combined disability rating of 100 percent on December 1, 2011. (Plaintiff's Brief at 11-12, Doc. No. 7; Tr. 672-72, 819, 885-86) Plaintiff points to *Bird v. Commissioner of Social Sec.*, 699 F.3d 337 (4th Cir. 2012) where the Court stated:

> Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates such deviation is appropriate.

*Bird*, 699 F.3d at 343.

Plaintiff argues that the ALJ failed to give "substantial weight" to the VA disability rating, and further failed to "clearly demonstrate" that a deviation was appropriate from the "substantial weight" standard asserted in *Bird*. (Plaintiff's Brief at 12, Doc. No. 7) However in response, Defendant notes that none of the pages Plaintiff cited from the administrative record contain either the actual rating decision from the VA or any reference to medical evidence. (Memorandum in Support at 15, Doc. No. 9) Thus, it is unclear what evidence or reasoning the VA used in making its determination. SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006) ("These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by [another agency] based on [its] rules."). Further, Defendant correctly notes that the December 1, 2011, determination by the VA could not have taken into consideration all of the evidence

relevant to the July 30, 2010, through August 7, 2014, period at issue in this social security determination. (*See* Tr. 32-33)

The ALJ indicated that she gave the disability rating little weight (Tr. 31), and it was appropriate, under *Bird*, for the ALJ not to have given the rating substantial weight because the only thing for the ALJ to evaluate and weigh was the conclusion that Plaintiff was disabled under the VA's rules. *See Rodgers v. Colvin*, No. 5:13-cv-00345-D, 2015 WL 636061, at *8-9 (E.D.N.C. Feb. 13, 2015) (stating that there was no "*Bird* issue" because "the VA disability rating decision [wa]s not contained in the record" and finding that, "[g]iven the lack of evidence of record pertaining to Claimant's VA disability rating and the medical evidence and rationale underlying that rating . . . the ALJ did not err by according little weight to Claimant's numerical disability rating.").

   c. **The ALJ relied on flawed vocational expert testimony.**

The Court agrees with Plaintiff's contention that the ALJ relied on flawed vocational expert testimony and therefore the ALJ's decision must be reversed under the Fourth Circuit's decision in *Mascio v. Colvin*. 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Court held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638. Further, the Court emphasized that the ability to perform simple tasks differs from the ability to stay on task." *Id.*

In the instant case, the ALJ found that Plaintiff has moderate difficulties in concentration, persistence, or pace. (Tr. 26) However, she failed to include such a restriction in her hypothetical question to the VE, rather limiting Plaintiff to simple, routine mental tasks. (Tr. 79-80) Thus, as in *Mascio*, the ALJ asked a legally insufficient hypothetical to the vocational expert because the

hypothetical did not account for Plaintiff's mental limitations. *Mascio*, 780 F.3d at 637. Although the ALJ noted that she rejected Dr. Farrell's proffered limitation on Plaintiff's ability to stay on task, she did not properly explain why Plaintiff's concentration, persistence, and pace difficulties did not warrant a limitation included in the RFC finding as required by *Mascio*. 780 F.3d at 638. (Tr. 31) The Commissioner cannot meet her burden of proof that there is alternative work Plaintiff can perform based on a flawed hypothetical question to the VE, and this case must be remanded.

## IV.   CONCLUSION

For the foregoing reasons, the Court is unable to conclude that the Commissioner's decision in this case applies the correct legal standard. As such, the Court will vacate the Commissioner's determination and remand this matter for a new hearing and further consideration consistent with this order.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) Defendant's Motion for Summary Judgment be **DENIED**;

(2) the decision of the Commissioner, denying the relief sought be **VACATED**; and

(3) this matter be remanded for further proceedings consistent with this Order.

Signed: July 28, 2016

Graham C. Mullen
United States District Judge